## MORRISSEY v. SHRIVER et al.

No. 10823—Opinion Filed Feb. 27, 1923.

(Syllabus.)

1. **Appeal and Error—Right to Complain—Permission to Intervene in Mortgage Foreclosure.**

Where S. is permitted to intervene in a foreclosure action brought by M. and asserts he holds a lien superior to that of M., and the plaintiff thereafter files a supplemental petition making S. a party defendant and alleging that the lien of S. is an inferior lien, held, that the plaintiff cannot complain of the action of the trial court in permitting S. to intervene.

2. **Judgment — Persons Concluded—"Privies."**

The general rule is that no one, except the parties and their privies, is bound by a judgment, and a party is not a privy to a judgment involving property, or a right, unless he acquires his interest either after suit is brought in which the title or right is involved, or after judgment was rendered.

3. **Same—Mortgage Foreclosure—Declaring Sewer Assessments Inferior Lien.**

A judgment decreeing the lien of special assessments for sewer purposes to be inferior to a mortgage lien is not res judicata as to holders of the sewer warrants who were not parties to the action or in privity with a party to the action.

4. **Municipal Corporations—Special Assessments—Priority of Lien.**

Where the statute makes a local or special assessment a lien on property and is

silent as to its priority, the lien so created may be given priority over any and all other liens, whether prior or subsequent to the assessment, if such an intention can be gathered from the act.

**5. Same—Intent of Legislature.**

The intention of the Legislature to make the lien of the special assessment prior to all other liens may be gathered from the general statutory provisions regarding taxation, the nature of the governmental function being performed, and the rights of the public in the enforcement of the police power, even though there are no specific words giving priority.

**6. Same—Priority of Sewer Assessment Over Mortgage Liens.**

Section 4407, Comp. Stat. 1921, makes the special assessment for sewer purposes a lien on the property prior to the lien of a mortgage existing at the time of the assessment.

**7. Limitation of Actions—Necessity for Pleading Statute.**

The statute of limitation must be pleaded by the party asserting it, and where not pleaded, is waived.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Dan Morrissey against Dias A. Shriver and others on note and mortgage. Judgment for defendant J. B. Sparrow, and plaintiff brings error. Affirmed.

B. O. Young, for plaintiff in error.

Hooker & Chambers, for defendant in error J. B. Sparrow.

COCHRAN, J. This action was commenced by Dan Morrissey to recover judgment on a promissory note executed by Dias A. Shriver and wife and to foreclose a mortgage. A number of parties were joined as defendants for the purpose of foreclosing any equity of redemption which they had, or claimed to have, in the property covered by the mortgage, and among them was J. O. Severns, of Oklahoma City, Okla. On February 3, 1915, the case coming on for trial, judgment was rendered in favor of the plaintiff and against all of the defendants for the amount sued for and foreclosure of the mortgage. Thereafter the property was sold at foreclosure sale and bid in by C. W. Flattery. On September 13, 1915, plaintiff filed his motion to confirm the sale, and on September 17, 1915, C. W. Flattery filed his objections to the confirmation. On April 1, 1918, J. B. Sparrow filed his objections to the confirmation of the sale and a motion to vacate the sale and judgment in so far as it affected his rights as holder of special sewer warrants issued against the said property. The motion of J. B. Sparrow, after setting out the proceedings which had been had in the case, recites that the judgment purports to foreclose the rights and interests of persons holding liens upon the premises by virtue of tax warrants and that at the time of the commencement of the suit and rendition of the judgment there were sewer certificates which were a lien upon said lands and prior to all other liens, as follows:

For the year 1911, the sum of $1,634.10;
For the year 1912, the sum of $1,471.54;
For the year 1913, the sum of $1,377.90

—and alleges that the said J. B. Sparrow is the owner of the tax warrants and was not made a party to the action, and that he had no knowledge of the foreclosure proceedings prior to the foreclosure sale. On April 16, 1918, an order was made overruling the motion to confirm foreclosure sale and sustaining the motion of Sparrow to vacate the judgment in so far as it pertained to J. B. Sparrow and sustaining the objections of J. B. Sparrow to the confirmation of the sale. On May 24, 1918, plaintiff filed his motion to vacate judgment as to certain of the defendants, which motion was on the same date sustained and permission was granted to file a supplemental petition against such defendants and against the defendant J. B. Sparrow, and on May 24, 1918, the supplemental petition was filed, and as against the defendant J. B. Sparrow alleged that after the plaintiff's mortgage had been executed a certain sewer was built upon a part of the real estate so mortgaged, and in payment for the construction thereof certain sewer warrants were issued, which warrants are now claimed by the defendant J. B. Sparrow, who claims a lien upon the premises by reason thereof. The plaintiff then denies that Sparrow is the owner of the warrants or that the warrants are a lien upon the real estate mortgaged to the plaintiff; but alleges that if they are owned by Sparrow and are a lien upon the property, such lien is inferior to the plaintiff's lien. Then follows the prayer that plaintiff be adjudged to have the first lien on said property and that same be foreclosed. J. B. Sparrow thereafter filed his answer, alleging the issuance of the warrants and asserting a first lien on the property by reason thereof. To this answer, the plaintiff filed a general denial. The case was tried on February 28, 1919, and judgment was was rendered for the plaintiff on his note and mortgage, but decreeing that J. B. Sparrow had a first lien

on the property for the payment of the sewer tax warrants. From this judgment, plaintiff has prosecuted this appeal.

In the first assignment of error the plaintiff complains of the action of the trial court in permitting Sparrow to intervene in this action, but it is our opinion that this contention is without merit because, regardless of Sparrow's rights to intervene in this action over the objection of the plaintiff, the record shows that after the court had permitted him to intervene and had vacated the judgment, the plaintiff voluntarily asked permission to file supplemental petition against Sparrow and other defendants, and he cannot now complain of the action of the court in permitting Sparrow to be made a party to the suit.

Under the second assignment the plaintiff urges that the court erred in adjudging Sparrow to have a lien against the property because the property involved was not a part of the incorporated city of Oklahoma City at the time the plaintiff's mortgage was executed by Shriver, but was thereafter platted by Shriver without the knowledge or consent of the mortgagee. For this reason plaintiff contends that Shriver could not dedicate the streets and alleys out of plaintiff's security. The question of the dedication of streets and alleys has no application to the facts in this case, because the statutes under which sewers are constructed do not provide that they shall be constructed under streets and alleys, but they may be constructed through any part of a person's property provided the statutory proceeding is followed. That being the case, it would not be material whether there were any streets and alleys in this particular addition to Oklahoma City.

It is next insisted that J. B. Sparrow is bound by the judgment which was entered against J. O. Severns foreclosing any lien claimed for sewer warrants. J. O. Severns was the contractor who constructed the sewers across the property involved and to whom the warrants were delivered in payment for the improvement. He was one of the original parties to the suit, and judgment by default was rendered against him on February 3, 1915. We are of the opinion that Severns being made a party to the suit does not preclude the rights of persons to whom the warrants had been sold and who were the owners of such warrants at the time the suit was brought, or the rights of any persons except those taking from Severns after the suit was brought.

In Cressler v. Brown et al., 79 Okla. 170, 192 Pac. 417, this court said:

"The general rule is that no one, except the parties and their privies, is bound by a judgment. The general rule is that a party is not privy to a judgment involving property, or a right, unless he acquires his interest either after the suit is brought in which the title is involved, or after the judgment was rendered."

It is also contended that the former judgment is binding because the municipal corporation of Oklahoma City was made a party to that suit and judgment rendered against it, and that the tax-collecting authority is the only necessary party to a suit of this character, and a judgment against it is binding on the holders of special warrants. In Ex parte Holman, 28 Iowa, 88, the court said:

"It is a fundamental, vital principle of the law that no man can be affected by any judicial proceeding to which he is not a party. No person can be concluded unless he has had a day in court. The law, before it decides against any man, or any man's rights, gives him an opportunity to be heard. I do not say that the bondholders are absolutely necessary parties to such a suit; but I do hold that if not parties, they are not bound, and the proceedings and decrees are, as to them, res inter alios acta."

In A., T. & S. F. R. Co. v. Commissioners of Jefferson County, 12 Kan. 127, the second paragraph of the syllabus is as follows:

"A decree enjoining county commissioners from issuing certain bonds, made in an action to which the persons claiming a right to them are not parties, is no bar to an action by such parties to compel the issue of those bonds."

In State v. Board of Commissioners of Wichita County (Kan.) 53 Pac. 526, the following statement of law is found in the syllabus:

"As against a bona fide holder, for value, before maturity, of negotiable refunding bonds regular in form, the record of a judgment in a suit brought by taxpayers against the officers who issued the bonds, enjoining them from issuing railroad bonds in exchange for which the refunding bonds purport to have been issued, is inadmissible either to prove the illegality of such railroad bonds, the fact that no such railroad bonds were outstanding, or a want of power in the county officers to issue the refunding bonds, where the holder is not chargeable with notice of such judgment."

We are of the opinion that where the special assessment warrants have been

transferred by the municipality to third persons, the holder of the warrant is not bound by a judgment affecting such warrants when he was not a party to the suit.

The next contention of the plaintiff is that the mortgage lien of the plaintiff was superior to the lien of the sewer warrants. The plaintiff's mortgage lien was acquired December 11, 1908; the lien of the sewer warrants attached on April 4, 1911. Section 4407, Comp. Stat. 1921, provides that the mayor and councilmen shall "certify the same to the county clerk to be collected as other taxes." It is the contention of the plaintiff that there is no statutory provision whereby this lien is made a prior lien to existing liens and incumbrances against the property affected. It is conceded by the plaintiff that the Legislature has the power to make a lien of this character paramount to all other liens, although prior in point of time; but attention is called to the holding of this court in the case of Basham v. Goodholm & Sparrow Investment Co., 52 Okla. 536, 152 Pac. 416, where the following language is found:

"Before we can take the liberty to supplant a recorded mortgage with a subsequent lien without the holder's consent, the law under which it is done should be couched in such clear and unambiguous terms that one who accepts a mortgage upon a tract of land may know that it is possible to improve him out of his security without his consent. Such a radical law should and can be made manifest in language of plain and definite meaning, and should not be left open to surmise, conjecture, or doubtful construction."

Several authorities are cited by plaintiff to support his contention that under statutes similar to ours the lien of a special assessment will not be given priority over a mortgage lien existing at the time the assessment was levied. These decisions are based upon a construction of a general statement of the law that such liens will not be given priority unless the statute by express provisions or by necessary implication makes such tax lien override all rights which have been acquired under prior mortgages, and those courts have held that statutes similar to ours do not, by necessary implication, make such liens override the mortgage lien. In vol. 25, R. C. L. 188, we find the following language:

"It is generally held that where the statute makes a local or special assessment a lien on property, and is silent as to its priority, the lien so created may be given priority over any and all other liens, whether prior or subsequent to the assessment if such an intention can be gathered from the act, but not otherwise. It would seem that such a legislative intent may be gathered from the general statutory provisions regarding taxation."

In Carstens & Earles, Inc., v. City of Seattle (Wash.) 146 Pac. 381, this question is fully discussed and the various cases are reviewed. In this case, reference is made to practically all of the decisions which are relied upon by plaintiff in the instant case, and, after reviewing all of the authorities, the court concludes as follows:

"Counsel for respondent relies principally upon the fact that the statute makes no specific provision in terms touching the question of superiority of the assessment lien over prior mortgage and other private liens. That, however, we think, is not the final test of the superiority of the assessment lien. Its superiority rests in the fact that it is imposed by virtue of the sovereign power of taxation; that the procedure by which it becomes a charge upon the land is a proceeding in rem, with no requirement for personal service of notice upon any person; and that the statute in terms makes it a lien 'upon the real estate' without reference to any person's title or interest therein, which lien 'shall continue until such assessments are paid.' This conclusion is not without strong support in the decisions from other states. Indeed, we think it is in harmony with the weight of authority."

In the same case the court uses the following language:

"The statute contains no express provision in terms making the assessment lien superior to prior mortgages or other prior private liens. * * * This procedure, we are of the opinion, points to a legislative intent to charge the assessment against the land itself, regardless of its ownership, and regardless of all prior liens upon its ownership, which rests upon private contract, or which, of necessity, are only a charge upon some person's title or interest in the land. Such private liens, of course, can rise no higher than their source. For manifestly no person can by contract create a lien upon land superior to his own title or interest therein, while the sovereign power of taxation can create a lien superior to every private interest in the land."

In Lybass v. Town of Ft. Myers (Fla.) 47 South. 346, the court held:

"If, as it seems, governmental statutory liens for local improvements may be made superior to mere contract liens of private parties acquired after the enactment of the statute providing for the lien, it is not necessary for the statute to in terms enact the priority. From the nature of the gov-

ernmental function being performed, and the rights of the public in the enforcement of the police powers, it is clear the intention of the Legislature was to put such liens upon the same footing as tax liens, thereby giving them priority over contract liens of private parties acquired subsequent to the enactment of the law providing for the lien of the municipality for sidewalk improvements."

It is our opinion that the rule announced in the Washington case and in the Florida case is a rule which should be followed in this jurisdiction in determining the priority of the liens in controversy, and that from the nature of the governmental function being performed and the rights of the public in the enforcement of the police power, and aided by the provision of the statute requiring that the liens for special assessments shall be "collected as other taxes," it was for the intention of the Legislature to put such liens upon the same footing as tax liens and give them priority over contract liens of private parties. This holding is not in conflict with the holding by this court in Basham v. Goodholm & Sparrow Investment Co., supra, because in that case the court was dealing with the question of priority between a mortgage and materialman's lien, where the rights of private parties alone were involved, and no question of the proper function of governmental powers or the construction of liens involving the exercise of police power was involved.

It is further contended that Sparrow's right of action has been barred by the statute of limitation. Conceding without deciding that the statute of limitation applies to a special assessment lien, it has been repeatedly held by this court that the statute of limitation must be pleaded by the party asserting or claiming it, and, when it is not pleaded, it is waived. St. L. & S. F. R. Co. v. Bloom, 39 Okla. 78, 134 Pac. 432; Reaves v. Turner, 20 Okla. 492, 94 Pac. 543; Torrey v. Campbell, 73 Oklahoma, 175 Pac. 524.

In the instant case the statute was not pleaded and, so far as the record discloses, the question was not presented in any manner to the lower court. This being the condition of the record, the plaintiff cannot avail himself of that defense against the Sparrow lien.

It is our opinion that the judgment of the trial court should be affirmed.

JOHNSON, V. C. J., and KENNAMER and BRANSON, JJ., concur. KANE and NICHOLSON, JJ., concur in conclusion.